The next case on the call is agenda number six, case number 129-895, Kuhn v. Owners Insurance Company. I understand that the attorneys on one side are going to split their arguments. Okay, very good. The clerk will give you a three minute warning. Are you prepared to proceed? Please proceed. May it please the court, counsel. My name is Terry Kelly. I represent one of the appellants in this matter, Stephen Price. Also with us are counsel Mr. Chase Mulchin, who represents the deceit and crap tree, as well as all of the student athletes, as well as Ms. Raker, who will be arguing after me, who represents Mark and Karen Kuhn. This is a declaratory judgment action involving the stacking or aggregating of the liability limits of multiple vehicles insured under a single motor vehicle policy to apply to a single loss. The fourth district here, which reversed the trial court's 73 page written decision, is in direct conflict with no less than eight reported appellate court decisions from the third and fifth district. These eight decisions are based on the Supreme Court's pronouncement over the last 30 years, emanating from what was dictum from the case of Grutter versus Country Mutual in 1993, but which has become the force of law, we believe, through the repeated affirmations by this very court in both 2006 decision of Hobbs and most recently in his 2020 decision in Hefts. The fourth district failed to recognize this dictum turned into rule of law application to this case, notwithstanding the 30 years of case law, which did that very thing. In December 5th, on December 5th, 2018, my client, Mr. Price, a coach at Normal West High School, was traveling back from a junior varsity basketball game with his team, all eight student athletes, as well as a volunteer coach, Charlie Crabtree, with a bus being driven by Mr. Kuhn, when a semi-tractor trailer being operated by Ryan Hewitt crossed the median of I-74 just outside of Bloomington, traveled on the wrong roadway in the wrong direction coming toward the school bus, smashed into the school bus, causing a tremendous collision and the death of both himself, as well as Mr. Crabtree, along with the serious injuries of all the other occupants of the school bus. Mr. Hewitt's semi-tractor trailer was insured by Owner's Insurance Company under a commercial automobile liability policy. That policy covered seven different vehicles with a declaration page that listed the seven different vehicles, each with $1 million in liability coverage, with the listing coverage for each of those vehicles, along with the premiums listed for each of those vehicles, separately. Counsel, there was only one covered vehicle involved in this accident, is that correct? There was only one vehicle that was insured under the policy that was involved in the accident. I'm careful with my words because all vehicles are covered and it's our position that there is coverage for all seven vehicles in the sense that Mr. Hewitt was insured under the policy and all vehicles would apply to the laws, particularly with regard to how the declaration page was set up. But a single vehicle insured under the policy was the vehicle that was involved in the collision, absolutely. Counsel, let me get to a basic question. Didn't this Court say in Hess that even assuming that a policy was arguably ambiguous, that the anti-stacking provision in the policy, as we have in this case, eliminated any uncertainty because it clearly and unequivocally prohibited stacking? Why doesn't that control in this case? What case, Your Honor? In the case before us. I'm sorry, I thought you said the Supreme Court ruled that. In the Supreme Court, to my reading, of the three cases that are relevant here, and that is Bruder, Hess, and Hobbs, and none of those cases did the Court say that where there was an ambiguity with the declaration page where it lists multiple coverages for each of the vehicles insured, that that ambiguity is somehow obviated by an anti-stacking clause. That's certainly owner's argument in this case, and we submit to you that that is not the rule of Hess, that is not the rule of Hobbs, and that is not the rule of Bruder. What do you think the rule of Hess is? The rule of Hess is, and Hess is not on all fours with the factual case here, but the rule of Hess is that when you have a single liability limit one time, that based on Bruder and Hobbs before it, then there's no stacking because it does not create an ambiguity. Then Hess goes on to state, however, we have recognized in both Hobbs and in Bruder that if in fact you have multiple listing of liability limits for each of the vehicles insured under the car, under the policy, that it would be very easy to find an ambiguity, and that it was more reasonable for an insurer to reasonably expect coverage under all of the vehicles insured for those, in this case, $1 million per vehicle coverage. So that's what you are holding, that's what you're asserting that Hess says. That's what the case law holds. I mean, I can quote to you exactly from Hess that says what I just said, and that is, is that the rule of law here in Illinois, when you synthesize all the cases are, if you have a single liability limit covering a single vehicle, strike that, if you have a single liability limit listed in the deck action, which insures multiple vehicles, that does not create an ambiguity, and is not inconsistent with the anti-stacking clause. The flip side of that, and what Bruder suggested in its dicta, which the court in Hobbs and then Hess reaffirmed, restated, was that, however, if you have multiple listings of liability limits covering each of the vehicles that's insured under the car, that creates an ambiguity. Now, as we all know, it's a long history of... Also, let me ask you this, to make sure we're all on the same page here. Would you agree that in Hobbs, this court made the statement that the statement in Bruder should not be construed as establishing a per se rule that an insurance policy will be deemed ambiguous as the limits of liability, and that you have to look at each case on a case-by-case basis, and you also have to construe the other provisions of the policy? I agree with that 100%. In fact, I'm glad you brought that up because... So, on a case-by-case basis, explain to us, you know, why your position is right. I will, and there's important aspects to the no per se rule, if you will, that you have adopted. First off, we've never argued that there is a per se rule, okay? Let's be clear about that. Second off, what does it mean when this court says, well, that's not a per se rule? Doesn't that, by implication, suggest that it's the rule in most cases, but there may be exceptions, right? That's what it means. It doesn't mean like, oh, well, you know, we have to always look at different things. The import of that is that, in most situations, the pronouncement by the Bruder Court, reaffirmed by Hess and Hobbs, is that, in most cases, creating liability limits, or putting liability limits for each insured vehicle under the policy is going to create the reasonable expectation that the insured is entitled to multiple coverages. That's the usual case. But it's not per se. We need to look at each case and see if there aren't maybe reasons why we aren't going to do that. And one of the things that's important here, Judge, with your question, is that we have eight decisions from the appellate courts that have specifically found that where you have multiple limits of liability, listed in the declaration page, and a clear anti-stacking clause that says we're going to limit coverage to a single policy limit no matter how many cars are involved in the accident, no matter how many insureds, et cetera, all those eight cases said there is a conflict between those two. And whenever you have a conflict between two provisions of an insurance policy, the law requires us to interpret that in a light most favorable to the insured for broader coverage. Counsel, in order to determine whether or not there's an ambiguity, don't we have to look at the entire contract and not just a specific provision? I agree with you, Justice. But you continue to refer just to the declaration. Actually, I said in the light of an anti-stacking clause. We don't shy away from the anti-stacking clause. Every policy here has an anti-stacking clause. This is what I would suggest to you. What you have to do and what the Fourth District did not do in this case is look at owner's anti-stacking clause and compare it with the anti-stacking clauses in all of the other appellate court decisions that allowed for stacking that said that anti-stacking clause cannot overcome the multiple listing of liability. So the point is it's a two-step process, right? First, you look at the anti-stacking clause. And this is what Bruder says. And it says if it refers you to the declaration page for what the limits of liability are, we now have to interpret those two provisions together, right? Because the limit of liability clause or the anti-stacking clause in and of itself does not tell us what the limits are. So we're referred to the declaration page. So now we have to read those two together, right? And the anti-stacking clause, and they all, let's be honest, they all essentially try to do the same thing. And they use different words. And we can go through the different policies that specifically refer to the anti-stacking clause in that case. But they all refer to the fact that they want to limit coverage to a single liability limit regardless of the number of cars insured, regardless of the number of cars involved in the accident. And then you have to look at the deck page that they refer to. And the deck page all of a sudden says, well, there's a million-dollar coverage on this vehicle. There's a million-dollar coverage on this vehicle. There's a million-dollar coverage on this vehicle. And I didn't make this up. Plaintiff's counsel didn't make this up. The Supreme Court of the State of Illinois stated in 1993 that that listing creates the reasonable expectation of multiple coverages. That statement was reiterated most recently. And you enjoyed in this, Justice Neville, in the Hess decision where you reiterated that statement. When you do that, when you multiply, list that, that creates an ambiguity, right? So then you have to look at the anti-stacking clause. And the question is, is the anti-stacking clause sufficient to overcome that ambiguity? And I would submit to you that there's nothing different about the owner's anti-stacking clause than the one in Cherry, than the one in all of the other eight appellate court decisions that ruled that the two were in direct or reconcilable conflict. And whenever you have that conflict, what happens? You have to rule in favor of broader coverage for the insured. So we don't shy away from the anti-stacking clause. In fact, and I know my time is limited here, the anti-stacking clause in Cherry states, the limit of liability, there would be no stacking or combining of coverages afforded to more than one auto policy, auto under this policy. The limit of liability shown in the declaration page for the coverage under Part C is the most we will pay regardless of the number of claims made, covered autos, autos and trailers, insurance, lawsuits filed, motor vehicles, heirs and survivors, premiums paid. Eight listings, owners only have seven, but this actually says the same thing. They say no combining of limits. This says no stacking and combining of limits. That's what Cherry's debt page, or yeah, its anti-stacking clause states. But yet they held that, quote, we recognize that the policy has specific anti-stacking language that states, quote, there would be no stacking or combining of coverages afforded to more than one auto policy, auto under this policy. This clause does nothing to cure the ambiguity created by its limits of liability clause, combined with the multiple listings of limits on the declaration page. This should kill me. Yes. Okay. I will circle back, but I appreciate all of your time. Good morning. Good morning, counsel. My name is Lindsay Rakers. I'm here on behalf of Appellants Mark and Karen Kuhn, and I just have a limited role with limited time. I want to try to discuss a couple of cases that I anticipate counsel will bring up in his argument. The first one is the Ritter case, and the Ritter court simply disagreed with the law that was before it. It disagreed with Gobin. It disagreed with Yates. And because it found that multiple listing of limits does not create an ambiguity or reasonable expectations of multiple coverages, it also disagreed with Bruder. It simply cannot be reconciled with the Bruder dicta. Beyond that, I want to point out that Ritter is also a pre-Hobbs case. So in addition to flying in the face of the law that was before it, Bruder, Gobin, and Yates, Ritter is simply outdated. The Hobbs case, of course, tells us that it would not be difficult to find an ambiguity arising from the declarations page that lists the liability limits separately for each covered vehicle. And of course, as counsel pointed out, we know that Hess later affirmed Bruder in 2020. In fact, we can go back in time to see that the Ritter decision was criticized well before Hobbs. The Morine case, M-O-E-H-R-I-N-G, in 2001, the Southern District specifically states, the Bruder dicta is a persuasive indication that the Illinois Supreme Court would differ from the Ritter court on this issue. And in the Bowers case in 2014, it goes on to say the same thing, essentially that the Ritter court did not even attempt to reconcile its decision with the Bruder dicta. I suspect you'll also hear about the Striplin case. Striplin is likewise out of date. It's pre-Hobbs, and Hess, and it relies on Ritter. Striplin suggests that Hall was the better application of Bruder, but we know that Hobbs overruled Hall. Still, it's important that even Striplin concedes listings of multiple liability limits may create an ambiguity. Now, the court in Striplin did go on to find that there was no stacking, but it was because there was a specific policy provision, one that outlined exactly what happens when none of the covered vehicles are involved in the crash, and those just aren't our facts here. We aren't saying the deck pages always trump the anti-stacking clause, but Owners said in this case the deck pages do trump because Owners directs the Ritter from the anti-stacking clause to the deck pages. The anti-stacking clause might otherwise be clear, but because that term, limit of liability, isn't defined, and instead you're referred back to the deck pages, that's what makes this policy ambiguous. It's just like the Allen case that we cover at length in our briefing. Carriers can unambiguously prohibit stacking, and many of them do. Hess and Striplin are actually examples of when multiple listings of limits do not create an ambiguity. These two cases show us how Bruder is not a per se rule, but neither the Hess nor Striplin facts apply to our case. Owners could have successfully limited coverage in many ways. They could have limited the coverage, the limit here where the limit for each vehicle is the same. They could have simply listed that limit once. Or it could have made clear that that policy only covers the vehicle involved in the crash. Owners decided not to do this. Yes, Your Honor. In this case, is it correct that the limit of liability is listed individually next to each vehicle? Is that correct? That is correct, Your Honor. Does that make a difference? I think that that's the problem. That's why it's confusing. You've got the limit of liability listed by each vehicle, and if you go back to Bruder, that creates the problem. Because you have this anti-stacking clause that says you can't stack or you can't combine limits, but go to the deck page to find out what the limit of liability is. Well, the limit of liability is listed as $7 million. Well, $1 million for each vehicle, though, right? That's different than it was in Hess. Is that correct? I think that there's a difference, and I'm not sure that I'm going to have the time. There's a difference between listing it for each vehicle and listing it more than once, Your Honor, and we do cover that in our briefing. I'm being told I have to be quiet now. Thank you, Ms. Rakers. Good morning, Your Honor's counsel. May it please the Court, Honor Dugan, on behalf of Owner's Insurance, I apologize for my hoarse voice. On page 20 of the appellant's reply brief, they say, ultimately, whether liability limits of a policy can be stacked or aggregated depends on the specific language of the policy. We agree. Mr. Kelly said they're not sharing the policy. They're not shying away from the anti-stacking provisions in this case. That's not entirely true. They never, except on pages 16 and 17 of the reply brief, address C-5. This is, as the Fourth District recognized, this policy has both what's called a traditional anti-stacking provision and an explicit anti-stacking provision. And those together distinguish this case from what was in Bruder, what was in the eight cases that they cite. We have a chart on pages 37 through 39 of our brief where we lay out the differences in the language in this policy from the language in all those policies. And that makes all the difference. The Fourth District here looked at the policy as a whole, as this Court has reputedly said, and it has specifically said, even if the declaration page is left open, some question of stacking, an explicit anti-stacking provision could clear it up. That's what we have here. We don't concede that our deck pages are ambiguous. And I think two hypotheticals illustrate that. I'm in that stage of life where I have several teenage drivers, so I have three cars. I drove one of my three covered cars, which is covered by an auto owner's parent company down here. If on the way from my hotel to dinner last night, I had gotten in an accident, it wouldn't have been reasonable for me to look at my policy, if it was exactly like this, and think that I have $3 million of coverage for two cars that are 350 miles away. And that is what the Fourth District did here. In an elegant, sort of simple opinion, it got to the heart of what this particular policy means. I don't know if the court wants me to walk through the specific items of the policy, and you've read our briefs, but I would focus on first the Section 2, in which the anti-stacking provisions are. It says, used as an auto, that's where coverage comes. And then it has C1, which says, when combined liability limits are shown in the deck pages, the limit shown for each accident will be the most we pay for any one accident. C3 is something that the plaintiffs' appellants have to read out of the statute. That says that if you have one of the four trailers that's covered by this particular policy attached to one of the semis, that that doesn't lead to combined coverage. But then C5 says, the limit of insurance for this coverage may not be added to the limits for the same or similar coverage applying to other autos insured by this policy to determine the amount of coverage available for any one accident. That's regardless of covered autos, insureds, premiums paid. And we would suggest that that C5, that particular provision, which was not present in Bruder, which was not present in the eight cases that they cite, is what distinguishes this from those cases. In conclusion, I would ask this Court, if you consider Bruder to be causing confusion, it might be helpful to underscore yet again, as you did in Hobbs, that that is not a per se rule. That that applied to the facts in Bruder, or the hypothetical facts in Bruder. And continue to emphasize that courts should address policies, each policy individually, look at the policy as a whole, and that if there might be some ambiguity, an explicit anti-stacking provision can clear up that ambiguity. If there are no questions, I will rest on my briefs and ask you to affirm the Fourth District. Thank you, Mr. Duggan. Thank you, Your Honor. Mr. Keller. Thank you. So, I'm going to pick up where I finished, because it's actually very pertinent to what Mr. Duggan stated. It's an issue of whether the anti-stacking clause in the owner's policy is sufficient to overcome the ambiguity created by the multiple listing of liability limits in the declaration page, right? And I've cited to you, and I believe all the cases specifically hold, the fact that they conflict in general is the ambiguity which requires you interpreting the policy in the light most favorable to the insurer. But Mr. Conner did indicate, excuse me, Mr. Duggan did indicate that his brief relayed or stated what all the anti-stacking clauses were and the eight cases that have upheld the stacking based on the Bruder Dicta. Look at the Fourth District's opinion here that is under review, and they didn't cite to one of them. They cited to one of the cases that allowed for stacking just to refer to the fact that some cases have. They did no analysis of the stacking clause versus the declaration page to see if in all those eight cases there should be a distinction between how that court looked at those stacking cases or those anti-stacking provisions and how we should in this case, right? If we're going to be honest, if we're going to say you have to look at the whole policy, which we believe we should, and we also have to look at how previous cases have handled the identical issue. And I read to you the Cherry anti-stacking clause in the Fifth District case that is almost identical. Few words are different, but the same as C-5. He claims it's different than all the others. The Fourth District didn't even look at this. And they don't address it in their brief. They don't compare the two to say how C-5 is different. It's not any different. And as I read to you what Cherry said, and Cherry said this anti-stacking clause does nothing to cure the ambiguity created by the limits of liability clause combined with the multiple limits on the declaration page. Why is this important? All right, the Fifth District says this. Without explicitly saying it, the Fourth District says something different. But in Hess, this court cited up to an affirmative favorably the Cherry case. It states, this is quoting from Hess, the appellate court below incorrectly compared this case to Cherry and Johnson. Both cases allowed stacking of underinsured motors coverage in a multi-vehicle policy. In contrast to the policy in this case, in Hess's case, however, the policies in Cherry and Johnson listed the liability separately for each covered vehicle. Based on this fact, the court concluded that a reasonable person could believe that the policy provided coverage in amount totaling the limits for all of the covered vehicles, citing the case, Cherry citing the Johnson. So this court basically affirmed the analysis that Cherry used, which has identical, almost identical anti-stacking clause to what owners has here, right? Fourth District didn't even look at it. They never addressed this. They never addressed the fact that if we're going to look at everything, what's important here is that we need to look at how the courts in previous decisions have ruled on the same issue. So it's not just we look at each case anew, but we also have to, in the concept of stare decisis, look at similar cases and similar facts and do they compel similar results. And in this case, if you look at all eight decisions, they compel, in this case, a similar result, that stacking is allowed, that there's ambiguity. That is the substance of it. You have to look at everything. And these cases matter. These eight decisions that are from our Third District and Fifth District matter. And they can't be ignored. The Fourth District completely ignored them. And so we asked this court, when looking at all the facts, looking at the entire policy, looking at the stacking clauses as compared to the cases that found they were not enough to overcome stacking, that you will come to the same conclusion that it is compelled by this court's pronouncement in Bruder, affirmed in Hobbs, and affirmed in Hess, and all of the appellate court cases that have applied that language to the specific facts that are essentially the same here. You will come to the same conclusion that here, again, the policy creates a reasonable expectation that multiple coverages and stacking should be allowed. Ironically enough, Bruder, Hess, and Hobbs never addressed the specific factual scenario that the Bruder Dicta addresses. Hess came close because it had more than one listing of liability limits, but not for all the four vehicles. That's an example of the exception to the per se rule, right? The per se rule in that case did not apply because there was more than one. And the court was very specific to say, we distinguish all of the appellate court decisions that allowed for stacking because they had liability limits for each of the insured vehicles under the policy. Whereas in Hess, they would have just had a single listing, but they ran out of room, right? So they had three cars listed with a single listing, and they ran out of room, so the last car was listed on the next page with the same listing. And the Supreme Court said, this is why we have to look at every case. This is distinguishable because that page doesn't list them for all. It wasn't intended to provide liability limits for all. It was just a scripter's issue where they couldn't fit them all on the same page. That's an example of where there's not a per se rule. But there's no such distinction in this case. This case, the anti-stacking clause is essentially the same as Cherry and similar to almost all the other 5th District and 3rd District cases. And you couldn't have a clearer opportunity in this case to say what we said in Bruder 30 years ago and reaffirmed in Hobbs 20 years ago and reaffirmed yet again 3 years ago in Hess that when you list multiple liability limits for each insured vehicle under the policy that you're creating a reasonable expectation of multiple coverages. This is your opportunity to say what we said in Bruder we meant. Thank you very much. Thank you. Unless there's any questions. Pardon? Unless there's any questions. I don't think there are any questions. I don't think there are any questions. Case number 129-895 is taken under advisement as agenda number 6. Mr. Kelly? Yes. Mr. Akers? Mr. Kagan? The Court thanks you for your arguments.